IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OTTERBEIN COLLEGE, | : | |
| Plaintiff | : | Civil Action 2:08-cv-1048 |
| v. | : | Judge Smith |
| CONTINENTAL INSURANCE CO., | : | Magistrate Judge Abel |
| Defendant | : | |

### ORDER

This matter is before the Court pursuant to Defendant's motion to compel a deposition of David L. Mead ("Mead") and to compel the production of certain documents (Doc. 43). On February 3, 2010, Defendant took Mead's deposition in his capacity as the Fed. R. Civ. Pro. 30(b)(6) designee for Plaintiff Otterbein College. It subsequently sought to take Mead's deposition in his own individual capacity, stating that Mead may have knowledge about documents not mentioned during his deposition or personal knowledge about documents concerning which he was examined. In a March 31, 2010 discovery dispute conference order, the Court found that Defendant should have asked Mead about his personal knowledge during the original deposition. (Doc. 42 at 2.) However, in an effort to insure that Defendant was not ambushed during summary judgment, the Court ordered Mead to provide Defendant with an affidavit "identifying each document he found in the search of Otterbein College files (many or all of which were apparently contained in a box) for

1

insurance policies, and providing any information known to him about how the documents got in Otterbein's files/box and where they came from." The Court also noted that "[i]f based on this information and specific portions of Mead's deposition testimony Continental believe there are topics about which it has the right to examine Mead individually, it may renew its motion - supporting it with pinpoint citations to the affidavit and deposition transcript." Plaintiff served upon Defendant Mead's affidavit on April 9, 2010.

Defendant has now renewed its motion to depose Mr. Mead, on four grounds. The Court will address these individually. In addition, it will address Defendant's request that Plaintiff be compelled to produce sixteen documents in its privilege log concerning the search for records.

I. "Mead fails to establish that he has personal knowledge of any fact in his affidavit."

Defendant's objection generally is that Mead in his affidavit "attempts to testify as to 'facts' about which, based on the Rule 30(b)(6) testimony, he likely has no first-hand knowledge." (Doc. 45 at 2.) The April 9, 2010 Mead affidavit stated that his knowledge of Plaintiff's insurance policies "is derived from a comprehensive review and search of the business records of the College, a review conducted by agents and/or employees of the College acting at my direction or the direction of my predecessor as Vice President for Business Affairs, Stephen R. Storck." (Doc. 43-2 at 2.) Defendant states that it "has a right to know who these unknown people are

2

and to distinguish the first-hand knowledge of Mead from hearsay testimony."

Plaintiff has now filed an amended Mead affidavit (Doc. 47). In it, Plaintiff identified the reviewing agents as R.M. Fields International ("R. M. Fields"), an insurance archaeology firm hired by Otterbein to review its business records, and Susan Kuis, an attorney employed by Otterbein to review its records for evidence of missing policies. (Doc. 47-1 at 2-3.) The Court finds this a satisfactory identification of Mead's "agents and/or employees of the College". Moreover, to the extent that Defendant is suggesting that the information these agents have passed on to Mead is not his knowledge, it is incorrect. Personal knowledge of an organization's operations can be inferred from an affiant's position within a company or other organization. *See, e.g., Catawba Indian Tribe of South Carolina v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990); *Garrett v. Trans Union, L.L.C.*, 2006 WL 2850499 at *7 (S.D. Ohio Sept. 26, 2006). Mead stated that he was Vice President in the Office for Business Affairs; it can therefore be concluded that he has personal knowledge of what people "acting at my direction or the direction of my predecessor" told him after they searched for records.

II. "Mead's affidavit completely contradicts Otterbein's corporate testimony".

Defendant argues:

At the February Rule 30(b)(6) deposition, Mead testified that Otterbein has no knowledge of where documents relating to the alleged insurance policies were located. Now, miraculously, Mead can identify

3

> the exact locations of where those documents were located.  Defendant has the right to cross-examine Mead as to the contradictions between Otterbein's corporate knowledge and Mead's alleged personal knowledge."

(Doc. 43 at 2.)  The Court observes that the reference to Mead's allegedly inconsistent deposition testimony lacks "pinpoint citations" to the deposition transcript or affidavit.  Defendant's sarcastic characterization of Mead's subsequent affidavit testimony as "miraculous" provides little basis for a sinister imputation that "[t]he admission that portions of Mead's affidavit is wrong... raises a 'red flag' as to whether other statements within Mead's affidavit are accurate."  (Doc. 45 at 2.)  Mead was asked at deposition, in his capacity as Otterbein's corporate representative, whether it was correct that Otterbein could not tell where those documents had come from in its business records.  Mead answered, subject to the objection of Otterbein's counsel as to the form of the question, that he did not believe that Otterbein could point to a specific location where the provided documents had come from.  (Doc. 43-4 at 9.)

Mead was subsequently ordered by the Court to provide "any information known to him" about where the documents had come from.  His ability to produce this information some days later, with the assistance of "agents and/or employees of the College", including the report of a firm of professional insurance archaeologists, is hardly "miraculous".  *See* Doc. 44-1; Doc. 44 at 9.  Defendant has received what it asked for, and what the Court ordered Otterbein to produce.  A second deposition of Mr. Mead, to ask him why he-as-Otterbein had not known this information earlier,

would be redundant.

III. "Mead's affidavit conflicts with the fact testimony of his predecessor, Stephen Storck."

Defendant states that, at deposition, Stephen Storck testified that he could not determine where each of the documents was located. "It is unclear as to how Mead can testify as to facts which his predecessor, the one who likely has personal knowledge, cannot." (Doc. 43 at 2.) Storck testified at deposition that he had participated in the search for records, but that his responsibility was "[t]o help the individual who did the search look through records that the college would have had in its possession." (Doc. 43-5 at 2.) He testified further that he simply pulled material from files and gave it to R.M. Fields' investigator, and that she reviewed the materials brought to her. (*Id.* at 4.) Storck also testified that he did not remember which documents were kept where. (*Id.* at 7.)

As noted above, Mead, a corporate executive, can testify as to information given to him by subordinates or hired agents. His affidavit is not in conflict with the testimony of Storck. Although Defendant asserts that Storck, not Mead, was "the one who likely has personal information", Storck testified explicitly that he did not remember where specific documents had been kept. Whether or not Storck could remember the information, Mead could testify in his affidavit that he knew, because he had obtained the information from "agents and/or employees of the College". Mead's affidavit did not state that he had obtained the information from

5

Storck, and his amended affidavit specifically identifies those from whom he did. Defendant can, if it it wishes, later attack the credibility of Mead, or of Storck. There appears no reason, however, to conclude that a new deposition of Mead is necessary.

IV. "Defendant is deeply concerned about Mead's testimony in his affidavit that the document listed in Paragraph 4(h), and documents listed in Paragraphs 4(c), (i), (j), (k) and (p) were located within Otterbein's business records, and therefore constitute business records of Otterbein. Evidence suggests the contrary."

Defendant set forth its basis for its belief that the document at 4(h) was not an Otterbein business record, but was in fact a document given to it by R. M. Fields. (Doc. 45 at 4.) In its memorandum contra, Plaintiff concedes that the document at 4(h) was listed erroneously, and it is omitted from the amended affidavit. Beyond this, although Defendant has apparently identified several other documents about which it would ask Mead at a new deposition, and about which it is "deeply concerned", it has not offered any specific reason to, or described any of the evidence which would, suggest why these are not what Mead says they are. Accordingly, the Court can find no basis for compelling Mead to testify again about them.

V. "In addition to seeking the fact deposition of Mead, Defendant requests that this Court order Otterbein to produce 16 documents listed in its privilege log relating to the search for historic insurance policies."

Defendant has identified certain documents in its privilege log which, it states, represent the materials upon which Mead based his claim of personal

knowledge as to the origins of certain historic insurance records.  It argues that a party cannot claim privilege as to documents upon which it, by its own assertion, has based testimony, because that would deprive its opponent any opportunity to independently verify the veracity of the testimony.  Plaintiff states, conversely, that "[t]he remaining documents requested by Continental are either privileged communications between counsel and client or constitute Otterbein's counsel's mental impressions, conclusions, opinions, or legal theories and are consequently protected under the attorney-client privilege and/or work/product doctrines."  (Doc. 44 at 9.)

Defendant's argument is persuasive on its face.  In *United States v. Ohio Edison Co.*, 2002 WL 1585597 (S.D. Ohio 2002), this court, citing the noted case of *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), found that a party can waive privilege by implication if it takes some affirmative action to use privileged communications to attack its opponent.  Here, Plaintiff's witness knowledgeable about business records has made affirmative statements in an affidavit concerning the provenance of certain records, in a case which depends largely upon whether or not certain records exist.  The stated basis of his knowledge is that Plaintiff's agents and employees, including a firm retained for that purpose, conducted a search, which turned up certain information now known to him.  The records and communications of those agents which supplied the information may now be at issue in this case.

However, Plaintiff states that the information upon which Mead relied (the

7

reports of R.M. Fields) has already been provided to Defendant, and that the documents sought are simply notes or communications of Plaintiff's counsel.  It has not, beyond this, directly refuted Defendant's arguments as to whether the disputed materials have been lost their privileged status because Mead relied upon them.  The Court concludes that Defendant's suggestion of an *in camera* review is appropriate to the situation.

VI.    Conclusions.

Defendant's motion to compel (Doc. 43) is **GRANTED IN PART**.  The Court finds no reason to compel a second deposition of David L. Mead.  However, Plaintiff is **ORDERED** to supply to the Court the documents corresponding to entry numbers 2, 9, 28, 42, 52, 103, 105, 107, 111, 115, 123, 127, 178, 188, 224, and 237 on its privilege log, for *in camera* review to determine if they are covered by privilege.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P. and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

                                                                    s/Mark R. Abel
                                                                    United States Magistrate Judge

8