IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OTTERBEIN COLLEGE, | : | |
| Plaintiff | : | Civil Action 2:08-cv-1048 |
| v. | : | Judge Smith |
| CONTINENTAL INS. CO., | : | Magistrate Judge Abel |
| Defendant | : | |

**ORDER ON DISCOVERY MOTIONS**

This matter is before the Court pursuant to Defendant's motion for extension of time (Doc. 49), Defendant's motion to compel a complete expert report and production of documents (Doc. 53), the motion of nonparties Henry R. Booth and RM Fields, LP to quash a subpoena served upon them (Doc. 56), and the motion of nonparty John A. Quagliotti to quash a subpoena served upon him (Doc. 58).

I.  **Quagliotti Report**

Plaintiff Otterbein College ("Otterbein") has brought suit for breach of contract and a declaration that insurance policies issued by a predecessor in interest to Defendant Continental Insurance Company ("Continental") obligate it to indemnify Otterbein for damages and defense costs associated with hazardous substances at a site known as the Kilgore Property.  In its April 7, 2009 preliminary pretrial order, the Court ordered that Plaintiff's experts make their Rule 26(a)(2)

1

disclosures 30 days after the close of non-expert discovery, and that Defendant's experts make theirs 45 days after the receipt of plaintiff's experts' reports.

On June 1, 2010, Otterbein served a report by John A. Quagliotti, Jr. His report stated that he had been retained

> to review relevant documentation and offer opinions in the areas of environmental engineer, environmental contamination, remediation of environmental contamination, the nature and extent of contamination in groundwater, surface water, sediments and soils at the former Kilgore Manufacturing Company facility and in the surrounding area, potential sources of contamination with respect to historical operations at the site; the timing and nature of the potential releases of contamination; remediation and potential future remediation activities to comply with regulatory requirements, and the present and future costs of such remediation.

(Doc. 53-1 at 1.) Mr. Quagliotti identified himself as a professional geologist and consulting hydrogeologist. He stated that his opinions were based upon his experience "and review of documentation relating to the Kilgore site." (*Id.*)

The Quagliotti report stated at the outset that "[t]he documents that I have reviewed are identified in Section 3 of this Report." (*Id.*) However, in subsections 2.1.1, 2.2.1, 2.3.1, and 2.71, captioned "Materials Relied Upon in Formulating the Opinion", Quagliotti listed some or all of the following:

- "Historical photographs"

- "Various electronic files including photos, reports, drawings, and letters relating to the case maintained in the office of Otterbein's counsel"

- "Public aerial photographs"

Continental, in correspondence with Otterbein's counsel, raised various

objections to this report. It argued that the references to "various electronic files" was too vague to satisfy the expert disclosure requirements of Fed. R. Civ. P. 26(2)(B), and that it was unclear whether all the documents Quagliotti had considered in preparing his report had been produced. In particular, Continental noted that Section 3 of the report did not list any "public aerial photographs", and that it was unable to identify a document which Quagliotti had referred to in Section 3 as "Otterbein Real Estate Committee, 1998. Numerous meeting notes from the Otterbein Real Estate committee". On June 23, 2010, Continental filed a motion "to compel complete expert report" (Doc. 53), stating:

> Three weeks after Continental made these simple requests, Otterbein has not provided full clarification of what documents Quagliotti considered in forming his opinion and whether all documents have been produced in the case... Until Otterbein's counsel fully clarifies which documents Quagliotti considered, it is unfair to require Continental to disclose and s

(*Id.* at 3.) Continental requested that the Court order Otterbein to produce "a complete report of Quagliotti which lists the documents he considered in sufficient detail to identify the documents." (*Id.*)

Otterbein rejoined that the Quagliotti report as produced was in compliance with Rule 26(a), because Section 3 fully detailed all of the documents which he had considered in forming his opinion. (Doc. 54 at 1.) In addition, it stated that, in response to subsequent requests for production of documents, it had affirmatively stated that "all documents that Mr. Quagliotti reviewed or considered in forming the opinions that he expresses in his expert report have previously been produced to the defendants." (*Id.* at 2.) Therefore, it stated, Continental had the confirmation it

sought that all the documents considered by Quagliotti were in its possession. Continental, in its reply in support of its motion, again asserted that Otterbein had not affirmatively acknowledged that Section 3 included all documents upon which Quagliotti had relied. It stated further that Otterbein had not acknowledged whether the "[v]arious electronic files" were encompassed in this section, or produced the "Otterbein Real Estate Committee 1988" documents. (Doc. 55 at 1.)

On July 13, 2010, Continental served Quagliotti with a subpoena *duces tecum*. (Doc. 56-1.) It demanded fourteen categories of documents, including all documents which Quagliotti had considered or reviewed in preparing his opinion. On July 28, 2010, Quagliotti moved to quash this subpoena. (Doc. 58.) His stated grounds were that, with respect to thirteen of the fourteen categories of documents, all responsive documents had already been produced to Continental by Otterbein. Furthermore, Category 7 of the subpoena had requested production of all reports and documents relating to reports Quagliotti had authored relating to any site which had also been used for the manufacture and disposal of ordnance. This, Quagliotti argued, was overly broad and unduly burdensome, because the request asked for documents which he had not considered in preparing his opinions in this case and which were not relevant to any issue.

Continental rejoined (Doc. 61) that the subpoena was narrowly tailored and sought relevant information. It stated that Quagliotti had failed to demonstrate any burden in producing the documents requested. Furthermore, Continental noted that Quagliotti himself in his report had compared the Kilgore Property to

4

other such properties, and that whether or not Quagliotti had prepared any similar reports was relevant to the question of his actual experience with the issue. Finally, Continental argued that, contrary to Otterbein's representations, Otterbein had never produced three documents listed in Section 3: a report from the Office of Technology Assessment, a USEPA report, and the "Otterbein Real Estate Committee 1988" documents. Quagliotti stated, in support of his motion (Doc. 63), that although Continental had provided reasons why it was entitled to the documents he had considered, its subpoena was not restricted to those documents. Instead, it was drafted broadly enough to demand any documents at all in his possession relating to the Kilgore Property report, not merely documents he had used or relied upon.

  In the course of these motions, several factual issues appear to have been resolved or mooted. Quagliotti's reply in support of his motion to quash was accompanied by his affidavit (Doc. 63-1). This stated, in essence, that the "Otterbein Real Estate Committee 1988" documents were a misnomer for documents already produced to Continental which contained both committee notes from other years and a newspaper article from 1988. The affidavit was accompanied by copies of the Office of Technology Assessment and USEPA reports. In addition, Quagliotti affirmed that he had never been retained to formulate expert reports on any other similar munitions sites, and that he had not considered any documents in preparing his report on the Kilgore Property which had not already

5

been produced to Continental.[1] (*Id.*)

Otterbein and Quagliotti have both argued that Otterbein has already produced to Continental all documents which Quagliotti considered or relied upon in producing his report, and that compelling the production of these documents again would be pointlessly duplicative. Nevertheless, as Continental points out, Otterbein has only produced "all responsive documents in its possession", not in the possession of Quagliotti. (Doc. 58-1 at 10.) Quagliotti has repeatedly claimed that the twenty-three documents listed in Section 3 are the only ones he considered, but he has neither argued nor shown that producing the twenty-three documents himself would be overly burdensome. Consequently, Continental is entitled to demand the production of the Section 3 documents from Quagliotti himself.

Continental has made no effort to defend the remainder of its subpoena against Quagliotti's arguments that production of the other thirteen categories of documents would be duplicative of Otterbein's own production. In addition, it essentially has not contested Quagliotti's argument that the subpoena is overbroad to the extent that it demands all documents simply relating to the Kilgore Property report, or all documents which Quagliotti maintains relating to similar sites, rather than documents which Quagliotti actually considered. Continental notes caselaw

---

[1] In its memorandum contra Quagliotti's motion to quash, Continental noted that "[i]f Quagliotti has never provided any opinions on sites involving pyrotechnical devices, then no documents exist and no burden exists." (Doc. 61 at 2.) Presumably, therefore, Continental is satisfied with Quagliotti's answer that there are no responsive reports.

that courts have sometimes deemed documents "considered" which encompass any materials that an expert read or reviewed relating to the subject matter of his opinion.  However, it concludes:

> If Otterbein's representation to this Court is correct and only the documents listed in Section 3 of Quagliotti's report are the only documents Quagliotti considered, the number of documents Quagliotti needs to produce in response to those requests total 23.  That number can hardly be considered overly burdensome.

(Doc. 61 at 7.)

Continental now appears to have the information it sought concerning the Office of Technology Assessment and USEPA reports, as well as the "Otterbein Real Estate Committee 1988" documents.  The only documents now actually at issue comprise Quagliotti's definitive production of the documents considered by him in connection with the creation of his expert report; these, he says, are those listed in Section 3 of his report.  Accordingly, Quagliotti's Motion to Quash (Doc. 58) is **GRANTED IN PART**.  To the extent that *he himself* has not already produced them to Continental, Quagliotti is **ORDERED** to produce all documents in his possession which he considered in connection with the creation of his expert report.  The subpoena *duces tecum* served upon him is otherwise **QUASHED**.  The Court does not find that an award of sanctions is appropriate with respect to this matter.

II.     Booth and RM Fields, LP Subpoena

On June 1, 2010, Otterbein also served on Continental a report by Henry R. Booth, of R. M. Fields, L.P., a firm of insurance archaeologists.  His report stated:

7

> I have been asked to offer my professional opinion regarding the evidence that exists to prove coverage was afforded for Otterbein and whether sufficient evidence is available to establish the existence, terms and conditions of policies issued through Continental and/or their legacy companies.

(Doc. 49-1 at 2.)  Mr. Booth identified himself as having worked in the field of insurance archaeology for over twenty-five years, and as having repeatedly given expert testimony in litigation.  In his report, he noted:

> B.  Documents Reviewed and Relied Upon – Policy Files, Reports on Insurance Reviews conducted by R. M. Fields International, LLC, the deposition testimony of Woodrow Macke, David L. Meade and Bernard A. Serek; excerpts from an insurance manual (Bates Nos.: CIC000911-CIC000939) and other documents specifically identified in this report.

(*Id.* at 3.)

As with Quagliotti, Continental has raised various objections that it has not been adequately provided with Booth's entire report, or that it has not been provided with or advised of all documents upon which Booth relied in creating his report.  In its June 7, 2010 motion for an extension of time to disclose its own expert report, Continental stated that an impending *in camera* review of disputed documents might affect its own experts' conclusions.[2]  (Doc. 49 at 2.)  In addition, it argued that: (1) Booth had stated that he had relied upon a June 8, 2006 R. M. Fields report, which Otterbein had failed to fully produce with all attachments; (2) although Booth had referred to "Policy Files" as documents he had relied upon, it was unclear what these encompassed; and (3) Otterbein had not confirmed that the

---

[2] The Court issued its order addressing the *in camera* review on June 17, 2010.  (Doc. 52.)

"other documents specifically identified in this report" only encompassed the documents identified by Bates number in Booth's report. Otterbein rejoined that it had already produced all the attachments to the report separately, and attached to its memorandum contra what it stated was a full and complete copy of the report. It also stated that Booth "identifies the documents he is relying upon by Bates number and any documents that he reviewed that were not produced in this case are attached to Mr. Booth's report and are identified by Exhibit number." (Doc. 50 at 5.)

In its June 23, 2010 motion to compel the production of a complete expert report, Continental demanded that Otterbein produce all documents to and from R. M. Fields encompassed on its privilege log, in light of Booth's designation as Otterbein's testifying expert. (Doc. 53.) In response, Otterbein stated that it had produced the documents in question on June 18, 2010. (Doc. 54 at 3.) Continental maintained that Otterbein continued to retain at least one document, privilege log entry #42, which was a document provided to a testifying expert.[3] (Doc. 55 at 3.) It is unclear whether there still exists a live controversy. Nevertheless, Continental is correct that, under Fed. R. Civ. P. 26(a)(2)(B)(ii), a testifying expert's report must "contain... the facts or data considered by the witness in forming" his opinions.

---

[3] In its Order of June 17, 2010, the Court identified this document as "correspondence between Kuis and Otterbein, attaching a copy of a letter sent by Kuis to R. M. Fields International, LLC". (Doc. 52 at 2.) The Court found that Document #42 did not appear to contain material upon which Otterbein's Rule 30(b)(6) deponent had based his claim of personal knowledge as to the location of certain insurance records, and that it had not thereby lost its privileged status.

9

*Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 715-717 (6th Cir. 2006). Consequently, Otterbein is **ORDERED** to produce any documents it has sent to or received from R. M. Fields or Booth which it has not already produced.

Finally, on July 13, 2010 Continental served Booth and R. M. Fields with subpoenas *duces tecum*. Like the Quagliotti subpoena, these subpoenas seek numerous categories of documents, most of which Booth and R. M. Fields claim Otterbein has already produced. In their motion to quash, however, Booth and R. M. Fields identify two specific areas which they find objectionable: (1) the subpoenas' demand for the "RM Fields library of policy wordings"; and (2) the demand for "[a]ll reports and documents relating to any reports you authored, co-authored, consulted or maintain relating to insurance policies... issued to or name [sic] as an insured any educational institution." (Doc. 56 at 4-5.) As to the former, the movants state that the "RM Fields library" comprises thousands of pages of policies and policy forms issued by various insurance companies. These, they say, amount to confidential trade secret information, are largely irrelevant to this case, and would be unduly burdensome to produce due to their great volume. As to the latter, the movants claim that policies issued to policyholders other than Otterbein are irrelevant to the issues in dispute here and would be unduly burdensome to produce.[4]

Continental argues in response to this that Booth claimed in his report that

---

[4] The other categories of documents demanded by these subpoenas do not appear to be in dispute, or the parties at least have not addressed them at length.

10

he reviewed and considered his entire policy wordings library and relied upon it, so it has a right to the production of this library in order to challenge Booth's opinions. Furthermore, it states, some exhibits to Booth's report were redacted, and it is entitled to unredacted versions of these documents because it suspects that material portions were redacted to eliminate pollution exclusions.  Finally, Continental argues that its request for the production of expert reports and related documents prepared by Booth and Fields relating to educational institutions is narrowly tailored and is relevant to explore whether Booth is qualified to provide expert opinions.

Booth and R. M. Fields, in their reply in support of their motion to quash, state that their policy wordings library is akin to a reference library, containing various sample insurance policies organized alphabetically by carrier, and that it is inaccurate to characterize perusing this library as "reviewing" the documents to create Booth's report:

> In searching the policy library for sample policies that might apply to the policies issued by Otterbein in this case, Mr. Booth looked only in the carrier files for Buckeye Union Insurance Company, Buckeye Union Casualty Company and Continental Insurance Company. Within those carrier files, Mr. Booth only searched for sample policies from the policy periods in question, i.e. 1963-1975.  Second Booth Aff., ¶5-6.  Therefore, Mr. Booth cannot be said to have "considered" all documents in the policy library.

(Doc. 62 at 4.)  The movants state that it is unreasonable and unduly burdensome to expect them to turn over the entire reference library simply because Booth consulted a portion of it in his research.  The movants' objection is well taken, and

11

the Court finds that requiring R. M. Fields to produce a copy of its entire policy wordings library would be unduly burdensome.  However, as Booth apparently consulted three carrier files in the library for sample policies from the 1963-1975 time period, R. M. Fields must produce those policies.[5]

Booth, in his affidavit accompanying the reply in support of the motion to quash, states that as he has not been retained to create any expert reports in any litigation involving educational institutions, there are no documents responsive to Continental's request.  (Doc. 62-1 at ¶12.)  This issue therefore appears to be moot.  Furthermore, he affirms that, contrary to Continental's suspicions, he did not alter any of the sample policies attached to his expert report in any way other than to redact the policyholder's name, address, and other identifying information from two policies.  However, Continental argues, it requires the insured's name in order to verify the authenticity of the policy and obtain any other information which available about specific endorsements or policy wordings.  This argument is well taken.

Accordingly, the motion of Booth and R. M. Fields to quash (Doc. 56) is **GRANTED IN PART**.  Booth and R. M. Fields are **ORDERED** to produce the contents of "the carrier files for Buckeye Union Insurance Company, Buckeye Union

---

[5] The movants argue that turning over the entire library would be unduly burdensome in part because many of the policies in the library are subject to confidentiality agreements between R. M. Fields and the policyholders.  Booth has based an expert opinion, however, upon the documents to which he referred and the presence or absence of wording in them.  He must produce the policies which he considered, and explicitly rejected, in doing so.

Casualty Company and Continental Insurance Company" covering the period 1963-1975.  If the movants claim that producing even this subset of their policy library is unduly burdensome because of confidentiality agreements with individual policy holders, they may file a motion for a protective order pursuant to Fed. R. Civ. P. 26(c) explaining how and why.  In addition, Booth and R. M. Fields are **ORDERED** to produce copies of the three sample policies accompanying Booth's expert report in the form in which they received them.  If the movants claim that doing so would force them to violate specific confidentiality agreements into which they have engaged with third parties, they may again file a motion for a protective order with respect to these exhibits.  The subpoenas *duces tecum* served upon them are otherwise **QUASHED**.  The Court does not find that an award of sanctions is appropriate with respect to this matter.

### III. Conclusion

For the reasons set forth above, the motions to quash (Docs. 56, 58) are both **GRANTED IN PART**.  The motion to compel the production of a complete expert report and documents (Doc. 53) is **GRANTED IN PART** to the extent set forth herein.  The motion for an extension of time (Doc. 49) is **GRANTED**; Continental, if it has not done so already, must make its experts' Rule 26(a)(2) disclosures by Thursday, September 30, 2010.  As provided in the preliminary pretrial order, any rebuttal expert reports must be made no later than 30 days after the receipt of defendant's experts' reports.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P. and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel
United States Magistrate Judge
